******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EDUARDO PEREZ ET AL. *v.* PETER MINORE
(AC 35199)

Gruendel, Bear and Dupont, Js.

*Argued October 23, 2013—officially released January 28, 2014*

(Appeal from Superior Court, judicial district of New Haven, Wilson, J. [motion to substitute]; Hon. Howard F. Zoarski, judge trial referee [judgment].)

*Bernard Pellegrino*, for the appellants (plaintiffs).

*James J. Nugent*, with whom, on the brief, was *Julia*

*A. Nugent*, for the appellee (substitute defendant).

*Opinion*

DUPONT, J. The plaintiffs, Eduardo Perez and Jose Fernandez, appeal from the judgment of the trial court, rendered in favor of the defendant, Peter Minore,[1] in which the plaintiffs sought monetary damages for civil assault based on statements allegedly made by the defendant to third parties, threatening to cause bodily harm to the plaintiffs.[2] Their sole claim is that the court erred in refusing to admit into evidence a police investigative report (report) and two audiotaped conversations between the defendant and third parties regarding the alleged threats made upon the lives of the plaintiffs.[3] We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history, which establish the relationship of the parties prior to the institution of the present action. In 2005, the plaintiffs leased a building owned by a limited liability company in which the defendant was a principal in partnership with his nephew. The lease agreement negotiated by the parties enabled the plaintiffs to open and operate the liquor store in the defendant's building, and also contained an option for the plaintiffs to purchase the building. After renovating the building, the plaintiffs opened their liquor store in October, 2006.

In addition to the lease agreement, the plaintiffs and the defendant had other business connections. The defendant loaned money to the plaintiffs for the operation of the liquor store and for another business owned by Fernandez. In 2008, the parties began to dispute the repayment of those loans[4] and to dispute questions arising from the exercise of the plaintiffs' option to purchase the liquor store property.[5]

In late 2008 or early 2009, Perez filed a complaint with the New Haven Police Department (department) claiming that the defendant had asked two men, Max Felix and Freddy Martin, to kill or cause harm to the plaintiffs.[6] Police Sergeant Alfonso Vasquez commenced an investigation, which included contacting both Felix and Martin and requesting that they "wear wires" while speaking with the defendant to determine whether there was sufficient probable cause for an arrest. On February 16, 2009, Martin spoke with the defendant while wearing a wire and Vasquez was able to record the conversation successfully. Vasquez was also able to record a conversation between Felix and the defendant. After further investigation, however, Vasquez concluded that there was insufficient evidence to support the plaintiffs' claims and subsequently closed the investigation without executing an arrest of the defendant.

The plaintiffs commenced the present action against the defendant and filed their initial complaint on January 13, 2011. The plaintiffs thereafter filed their revised

complaint on October 11, 2011, in which they sought monetary damages for civil assault arising from the threats of serious bodily harm or death caused by the defendant's verbal requests of Felix and Martin to cause such serious bodily harm to the plaintiffs.[7] In anticipation of trial, the plaintiffs subpoenaed copies of Vasquez' report and copies of the taped conversations between the defendant and Martin and the defendant and Felix.[8] In response, corporation counsel for the City of New Haven (city) filed a motion to quash the admission of the report and tapes at trial, as well as a request for a protective order.[9]

Trial was held over the course of two days, beginning on October 23, 2012. The court heard arguments on the city's motion to quash at the beginning of the trial. The plaintiffs subpoenaed their first witness, Lieutenant Patricia Helliger, as the records keeper for the department. Helliger delivered Vasquez' report to the court, and upon offering the report into evidence, the city renewed its argument in regard to its motion to quash pursuant to General Statutes §§ 1-216 and 1-210 (b) (3) of the Freedom of Information Act (act). At the conclusion of the argument, the court conducted an in camera review of the report and sustained the city's objection concerning its admissibility. The court also ruled the taped conversations to be inadmissible on the same grounds.

On November 6, 2012, the court issued its memorandum of decision in which it held that "the alleged claims regarding statements by [the defendant] were not proven, and even if any statement was made to a third party it would not constitute an assault as claimed by the plaintiffs." Relying on *DeWitt* v. *John Hancock Mutual Life Ins. Co.*, 5 Conn. App. 590, 594, 501 A.2d 768 (1985), the court concluded that "[t]he plaintiffs have failed to prove that a civil assault occurred by alleged statements to third parties." The court also found that "damages [were] not proven by either plaintiff by a fair preponderance of the evidence." The court then rendered a judgment for the defendant. The plaintiffs filed the present appeal on November 21, 2012.

We begin by setting forth the applicable standard of review. The plaintiffs argue that our standard of review is plenary because it concerns the interpretation of statutes, which involves a question of law. The defendant argues that our standard of review is abuse of discretion because this appeal concerns an evidentiary ruling. We agree with the defendant that abuse of discretion review of the present claim is appropriate because the plaintiffs' only issue on appeal is whether the court erred in excluding the report and audiotapes from evidence. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial

court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *State* v. *Coccomo*, 302 Conn. 664, 670–71, 31 A.3d 1012 (2011).

The plaintiffs' sole issue on appeal is that the court erred in refusing to admit into evidence the report and audiotaped conversations between the defendant and Felix and the defendant and Martin regarding the alleged threats made upon the lives of the plaintiffs. Specifically, the plaintiffs contend the court incorrectly applied §§ 1-216 and 1-210 to the report and audiotapes in excluding such evidence. We disagree.

In excluding both the report and the audiotapes from evidence at trial, the court relied primarily on §§ 1-216 and 1-210. Section 1-216 states: "Except for records the retention of which is otherwise controlled by law or regulation, records of law enforcement agencies consisting of uncorroborated allegations that an individual has engaged in criminal activity shall be reviewed by the law enforcement agency one year after the creation of such records. If the existence of the alleged criminal activity cannot be corroborated within ninety days of the commencement of such review, the law enforcement agency shall destroy such records." Section 1-210 (b) provides in relevant part: "Nothing in the Freedom of Information Act shall be construed to require disclosure of . . . (3) Records of law enforcement agencies not otherwise available to the public which records were compiled in connection with the detection or investigation of crime, if the disclosure of said records would not be in the public interest because it would result in the disclosure of (A) the identity of informants not otherwise known or the identity of witnesses not otherwise known whose safety would be endangered or who would be subject to threat or intimidation if their identity was made known . . . or (G) uncorroborated allegations subject to destruction pursuant to section 1-216."

On the basis of the evidence before it, the court correctly concluded, after an in camera review of the report, that the report and the audiotapes were inadmissible pursuant to those statutes.[10] Section 1-216 applies to law enforcement records that contain "uncorroborated allegations." In the present case, Vasquez conducted an investigation based on the plaintiffs' claims and determined that all such allegations were uncorroborated because there was no overt act on the defendant's part and thus no probable cause. Vasquez then closed the case without questioning or arresting the defendant. Therefore, § 1-216 is directly applicable to the report because it contains "uncorroborated allegations that an individual has engaged in criminal activity"

as well as to the audiotapes, the contents of which were incorporated into the report.[11]

Although the plaintiffs assert that the department's failure to destroy the report and audiotapes indicates that the allegations were not, in fact, uncorroborated, there is nothing in the record to indicate that the department's failure to do so was anything more than an administrative oversight.[12] Because the report and audiotapes fit within the auspices of § 1-216, we cannot conclude that the court abused its discretion in excluding the report and audiotapes from evidence pursuant to § 1-210 (b) (3) (G), which does not require disclosure of "uncorroborated allegations subject to destruction pursuant to section 1-216."[13]

Furthermore, even if the court's ruling on the disclosure of the report and audiotapes were incorrect, the failure to admit such evidence was harmless error because the court concluded not only that the plaintiffs failed to prove that a civil assault had occurred, but also that the plaintiffs had not suffered any harm as a result of such an alleged assault. "[B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful. . . . Moreover, an evidentiary impropriety in a civil case is harmless only if we have a fair assurance that it did not affect the [fact-finder's] verdict. . . . A determination of harm requires us to evaluate the effect of the evidentiary impropriety in the context of the totality of the evidence adduced at trial." (Citation omitted; internal quotation marks omitted.) *Klein* v. *Norwalk Hospital*, 299 Conn. 241, 254–55, 9 A.3d 364 (2010).

We affirm the trial court's judgment for the defendant in this action for civil assault, concluding that the subpoenas for production of the department's report and the audiotapes were correctly quashed.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The named defendant, Peter Minore, died on December 17, 2011, and the trial court granted the plaintiffs' motion to substitute his daughter, Doreen Scungio, the executrix of his estate, as the party defendant. We refer to Minore as the defendant in this opinion.

[2] The parties agree that the allegations of the plaintiffs' complaint constitute a claim for civil assault, that is, "the intentional causing of imminent apprehension of harmful or offensive contact in another." *DeWitt* v. *John Hancock Mutual Life Ins. Co.*, 5 Conn. App. 590, 594, 501 A.2d 768 (1985).

[3] The importance of the report and taped conversations relate to their relevance to prove the plaintiffs' allegations of civil assault and to the plaintiffs' claim for damages.

[4] In *Minore* v. *Fernandez*, Superior Court, judicial district of New Haven, Docket No. CV-08-5023787-S (January 30, 2012), Minore filed an action against Perez, Fernandez, and Fernandez' wife seeking fulfillment of two promissory notes. The court rendered judgment in favor of Minore in the total sum of $110,515.44. This court affirmed that judgment in *Minore* v. *Fernandez*, 139 Conn. App. 908, 56 A.3d 473 (2012).

The defendant's estate also has a second case currently pending in the

Superior Court in which it is seeking monetary damages from Mayimbe, LLC, a limited liability company owned by Fernandez, for failure to pay the amount due under another promissory note. See *Scungio* v. *Mayimbe, LLC*, Superior Court, judicial district of New Haven, Docket No. CV-11-6024507-S.

[5] At a prior trial, Perez admitted that various problems arose affecting the sale of the property including difficulty in obtaining financing, a defect in title, and environmental concerns that delayed the closing. The closing ultimately did occur and the deed was transferred to the plaintiffs in exchange for payment.

[6] Neither Felix nor Martin are parties in the present action.

[7] The plaintiffs filed their revised complaint in response to the defendant's request to revise, filed February 17, 2011, in which the defendant requested that the plaintiffs identify the unnamed third parties and the contents of the alleged conversations between the defendant and the unnamed third parties. The revised complaint names Felix and Martin and details the contents of the alleged conversations, but is otherwise the same as the original complaint.

[8] The plaintiffs served two separate subpoenas. The first subpoenaed Lieutenant Patricia Helliger as the custodian of records for the department to introduce and testify as to the contents of the report. The second subpoenaed Sergeant Joseph Dease of the department's property desk to introduce and testify as to the contents of the audiotapes also at issue in the present appeal.

[9] Although the court did not explicitly rule on the city's motion, it did exclude the report and the audiotapes on the same basis as proffered by the city in its motion to quash.

[10] Although we are not bound by the decisions of our trial court, we note that such courts have addressed the process a court should undertake in evaluating such records: "Compliance with the intent of § 1-210 (b) (3) (G) requires the court to follow the procedure adopted in *Provost* v. *State*, Superior Court, judicial district of Hartford, Docket No. CV-99-0586362 [December 9, 2002]. In that case, the court received documents under seal and conducted an in camera review to determine whether they contained uncorroborated allegations of criminal activity. The in camera review involves two steps. First, the court must determine whether the allegations in the requested records regard criminal activity, making them subject to the record-keeping requirements of § 1-216. That determination is a question of law for the court. . . . Second, if the court determines that the allegations regard criminal activity, then it must determine if the allegations are corroborated. If the court determines that the allegations are corroborated, the records should be disclosed, consistent with § 1-210 (a). If the court determines that the allegations are not corroborated, then, in compliance with § 1-210 (b) (3) (G), the records should not be disclosed. Furthermore, § 1-216 requires law enforcement agencies to destroy records containing uncorroborated allegations of criminal activity within [fifteen] months of their creation." (Citation omitted.) *Vogth-Erikson* v. *Delmore*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-03-0197020-S (August 13, 2004) (37 Conn. L. Rptr. 670).

[11] We note that there is existing case law that provides for the balancing of a criminal defendant's rights in determining whether information, otherwise exempt under the act, is disclosable in certain circumstances under the confrontation clause. *State* v. *Januszewski*, 182 Conn. 142, 170–74, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). There is no authority, however, to indicate that such an analysis is necessary in a civil assault case. See *Townsend* v. *Commissioner of Correction*, 116 Conn. App. 663, 672, 975 A.2d 1281 ("Despite the statutory protections, the petitioner argues that his need to examine the records outweighed the statute's confidentiality policy. . . . [T]here is no authority to suggest that in camera review of such records was required upon a showing here in the petitioner's civil habeas case. Moreover, because a great deal of the information sought would have been available to the petitioner through the officers' testimony, there was little need to allow the petitioner access to the files." [Citation omitted.]), cert. denied, 293 Conn. 930, 980 A.2d 916 (2009).

[12] Vasquez testified that he closed his investigation of the plaintiffs' claims in February, 2009. Therefore, pursuant to § 1-216, the records should have been destroyed no later than June, 2010.

[13] Preventing disclosure of such records comports with the original purpose of the act. Then State Senator Richard Blumenthal, speaking in favor of Public Acts, No. 90-335, now § 1-210, stated: " 'The purpose really is to provide some protection for individuals who may be the subject of these

kinds of allegations and who deserve some protection against disclosure under [the act].' 33 S. Proc., Pt. 5, 1990 Sess., pp. 1546–47." *Bona* v. *Freedom of Information Commission*, 44 Conn. App. 622, 631–32 n.10, 691 A.2d 1 (1997).

---