******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

*Syllabus*

The defendant appealed to this court from the judgment of the trial court
granting the application for a civil protection order filed pursuant to
statute (§ 46b-16a) by the plaintiff, an executive assistant to the first
selectman of a Connecticut town. On two occasions in 2018, the defen-
dant, a town resident, visited the first selectman's office where the
plaintiff worked, and, during the second visit, the police were called
and the defendant was arrested for breach of the peace. In her applica-
tion, the plaintiff alleged that the defendant stalked her and caused her
to fear for her safety at work and at her home, and, in an accompanying
affidavit, described, how the defendant had threatened and harassed
her. Following a hearing at which the parties, the first selectman and
V, an employee of the town's tax collector's office testified, the trial
court found that the requirements of § 46b-16a had been satisfied, and,
therefore, it granted the plaintiff's application and issued a protection
order. *Held*:

1. The defendant could not prevail on his claim that the trial court abused
   its discretion by excluding evidence of certain audio and videotape
   recordings that he offered at the hearing on the application for a protec-
   tion order, that court having properly determined that the recordings
   were not relevant to its determination of whether to grant the applica-
   tion: the recording of a conversation between the defendant and the
   first selectman that purportedly contained audio evidence of the first
   selectman using coarse language at the town hall and calling the defen-
   dant inappropriate names would not have aided the court because it
   would not have made the existence of any fact material to whether the
   defendant's behavior toward the plaintiff reasonably could have caused
   her to fear for her physical safety more or less probable than it would
   have been without the evidence, and, to the extent that the defendant
   sought to argue that the first selectman's use of such language at his
   office made it less likely that the defendant's use of similar language
   would have caused the plaintiff to fear for her safety, the defendant
   never proffered that the plaintiff was present for the conversation on
   the recording; moreover, the defendant failed to explain to the court
   how a recording that purportedly contained evidence of an unidentified
   employee of the tax collector's office demanding that the defendant pay
   $20 for his video recording was relevant, as it was not in dispute that
   the defendant and the town had ongoing issues related to the defendant
   paying for copies or recordings of public records, and the recording did
   not purport to involve either V, who had testified at the hearing about
   her encounters with the defendant, or the plaintiff; furthermore, contrary
   to the defendant's claim, the court gave the defendant every opportunity
   to cross-examine witnesses, to present his own testimony, and to call any
   additional witness or to offer relevant evidence in support of his defense.

2. The defendant's claim that the trial court improperly issued the protection
   order despite the fact that he was not arrested for violating any of the
   statutory provisions set forth in statute (§ 54-1k) governing criminal
   protective orders was unavailing; that court issued the protection order
   pursuant to § 46b-16a, which contains no reference to § 54-1k, nor does
   it limit the court's authority to issue a protection order to individuals
   arrested under any particular enumerated statute.

3. The defendant could not prevail on his claim that the trial court improperly
   issued the protection order partly on the basis of his having videotaped
   the plaintiff performing her duties as a public employee, which he
   claimed did not constitute stalking because he had a legal right to do
   so; contrary to the defendant's contention, to obtain a civil protection
   order pursuant to § 46b-16a on the basis of stalking, the plaintiff needed
   only to allege and prove that on two occasions the defendant harassed,
   surveilled or monitored her in a manner that reasonably caused her to
   fear for her physical safety, and the court's findings that the defendant

acted on two occasions in 2018, in a manner that would cause a reasonable person to fear for their safety were not clearly erroneous, as the plaintiff testified with respect to the 2018 videotaping incident that the defendant had harassed her by surveilling her and aggressively placing a video camera within one foot of her face while interrogating her about freedom of information requirements, and such actions, when coupled with his threatening behavior during the second 2018 encounter with the plaintiff, were sufficient to satisfy the requirements of stalking necessary to support the issuance of a protection order in this case.

4. This court declined to review the defendant's claim that the trial court improperly issued the protection order on the basis of actions that implicated his exercise of his rights of free speech and access to public records, the defendant having failed to brief the claimed constitutional issues adequately.

5. This court declined to review the defendant's unpreserved claim that the trial court violated his right to due process by improperly engaging in ex parte communications with the plaintiff, the record having been inadequate to review that claim, as it was not adequate to ascertain whether an ex parte communication happened at all, let alone the nature of any such communication or its harm to the defendant.

Argued December 2, 2019—officially released June 16, 2020

*Procedural History*

Application for a civil protection order, brought to the Superior Court in the judicial district of New London and tried to the court, *Hon. Emmet L. Cosgrove*, judge trial referee; judgment granting the application, from which the defendant appealed to this court. *Affirmed.*

*D. G.*, self-represented, the appellant (defendant).

*Mark S. Zamarka*, with whom, on the brief, was *Edward B. O'Connell*, for the appellee (plaintiff).

*Opinion*

PRESCOTT, J. The defendant, D. G., appeals from the judgment of the trial court granting an application for a civil protection order filed pursuant to General Statutes § 46b-16a[1] by the plaintiff, S. A., an executive assistant to the first selectman of a Connecticut town. In her application, the plaintiff alleged that the defendant stalked her and caused her to fear for her safety at work and at home. On appeal, the defendant claims that the court improperly (1) excluded evidence on the ground of lack of relevance, (2) issued the protection order despite the fact that the defendant was not arrested for violating any of the statutory provisions set forth in General Statutes § 54-1k,[2] (3) issued the protection order partly on the basis of the defendant's having videotaped the plaintiff performing her duties as a public employee, which did not constitute stalking, (4) issued the protection order on the basis of actions that implicated the defendant's exercise of free speech and his right to access public records, and (5) engaged in ex parte communications with the plaintiff. We disagree and affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history.[3] The defendant is a town resident. On at least two occasions, once on an unspecified date in the summer of 2018, and again on December 26, 2018, the defendant visited the office of the town's first selectman where the plaintiff worked. The second visit ended with a call to the police, who arrested the defendant for breach of the peace.[4]

The next day, on December 27, 2018, the plaintiff filed with the court an application for a civil protection order. The affidavit accompanying the application averred that the plaintiff had been working at the office of the first selectman on December 26, 2018, when the defendant presented himself seeking documentation related to a proposed public safety complex in the town. He asked the plaintiff to issue him "a waiver of fees so that he could go to various town departments and request information without being charged the standard fee for copies or taking pictures/scanning information." When the plaintiff informed the defendant that she was not authorized to issue such a waiver but that she would have the first selectman contact him to discuss the matter, the defendant continued to demand the waiver.

The plaintiff began to "feel harassed and then threatened" by the defendant. She asked the defendant to leave, but he became "very agitated," and began yelling, swearing, and pointing at the plaintiff in an aggressive manner. He called the plaintiff a "fucking retard" or said she was "fucking retarded" approximately one dozen times. The plaintiff became frightened and pushed a "panic button" on her desk, which alerted the police department that there was a problem at the town hall.

Employees in a nearby office heard the defendant yelling and called 911. When the defendant realized that the plaintiff had summoned the police, he became "even more agitated, yelling louder and continuing to call [the plaintiff] names and pacing and moving aggressively toward [the plaintiff]," pointing at her and telling her that "it was over for [her]" and that he would treat her in the same manner in the future. The defendant eventually left the office, but the plaintiff was unsure whether he remained elsewhere in the building and was frightened due to the defendant's "increasingly violent behavior."

The plaintiff stated in her affidavit that the defendant had been in her office "many times in the past couple of years." She indicated that she and her coworkers felt nervous and uncomfortable every time the defendant visited the building. She further indicated that she was scared that he would discover her home address and would come to her home because he had done so in the past to other town employees in order to demand information about town business. The plaintiff claimed that the defendant previously had "gotten in trouble" for allegedly assaulting an elderly town employee. Although the plaintiff was unsure whether the defendant owned any weapons, she averred that "he has spoken of the fact that he is a huge supporter of the [second] amendment so I am scared that he does have weapons and that he will use such weapons against me."

The court, *Hon. Emmet L. Cosgrove*, judge trial referee, conducted a hearing on the application on January 7, 2019. The plaintiff was represented by counsel, and the defendant appeared as a self-represented party. The court first heard the testimony of the plaintiff in support of the allegations in her application. The defendant was permitted to cross-examine the plaintiff, although the court required him to direct his questions to the court, which then posed them to the plaintiff. The defendant did not object to this procedure.

The plaintiff called as additional witnesses both the first selectman and V, an employee of the tax collector's office located down the hall from the first selectman's office. V, who had been working at the time of the December 26, 2018 incident, indicated that she knew of the defendant because she had seen him at the town hall on multiple occasions, including one time when she had spotted him videotaping the activities of the tax collector's office. She testified that, on December 26, 2018, she heard the defendant cursing and screaming at the plaintiff from down the hallway and was concerned enough that she called 911.

The first selectman testified that the defendant was a frequent visitor to the town hall and to town meetings and that "there's an ongoing conflict between [the defendant] and the town no matter what the business

is." The first selectman also testified that the plaintiff was frightened of the defendant because of the December 26, 2018 altercation and confirmed that the defendant previously had engaged in a "pushing/shoving match" with another town employee at the town community center. The defendant cross-examined both V and the first selectman.

The defendant waived his privilege against self-incrimination[5] and testified briefly on his own behalf but did not call any other witnesses. During his direct testimony, the defendant also sought to play and to admit into evidence audio and/or video recordings of interactions that he purportedly had with the first selectman and with other town employees. The court, after hearing the defendant's offer of proof regarding the content of these recordings and his reasons for offering them, concluded that the recordings involved matters unrelated to the issues before the court and, thus, they were not relevant to its adjudication of the protection order application. The court also declined to admit into evidence a purported transcript that the defendant had created of an audio recording he had made of the December 26, 2018 incident. The court, nevertheless, permitted the defendant to play the recording in open court.[6]

On cross-examination by the plaintiff, the defendant admitted that he had videotaped town employees in the past, and it was "quite possible" this included the plaintiff. He acknowledged having been asked to leave the town hall on previous occasions. He also stated that he understood the town's policy with respect to copying fees and knew that the plaintiff did not have the authority to grant him a waiver.

In his closing summation, the plaintiff's counsel argued that all statutory requirements for the issuance of a protection order had been met and asked the court to order that the defendant not behave in any physically abusive or threatening manner toward the plaintiff and to stay away from her residence. Recognizing that the town hall was a public building, counsel asked that any protection order issued by the court require the defendant to call and "make an appointment with a specific person or department so that an escort can be arranged to make sure that the visit goes smoothly, and that [the defendant] does not violate, accidentally, any orders that the court might fashion."

The defendant argued in his closing summation that he read § 54-1k as limiting the court's authority to issue a protection order to those instances in which a person has been arrested for violating one of the statutes enumerated in § 54-1k, which he noted did not include an arrest for breach of the peace. Further, he argued that he believed that his interactions with the plaintiff fell "under the umbrella of free speech" or, alternatively, did not constitute either a threat of actual physical harm

or stalking, which he asserted was a prerequisite for the issuance of a protection order.

On the basis of its review of the application and accompanying affidavit, and after hearing from the parties, the court found that the requirements of § 46b-16a (a) had been satisfied. See footnote 3 of this opinion. The court then issued the following protection order effective for a period of one year: "[Y]ou will have to surrender any licenses that you hold to own or possess a firearm, or to surrender any firearms that you possess or control. . . . [Y]ou may not threaten, harass, stalk, interfere with, [or] abuse the [plaintiff]. . . . You must stay away from her home, or anywhere that she may reside . . . . In light of the fact that she works in a public building . . . before you enter the town hall, you must have an appointment set up with an individual in [the] town hall ahead of time [so] that you may be escorted to that particular town hall office. You may contact the first selectman's office in writing or by e-mail or by telephone . . . . If you violate this order . . . it is a separate crime that's punishable by up to five years in prison." This appeal followed.[7]

"We apply the same standard of review to civil protection orders under § 46b-16a as we apply to civil restraining orders under General Statutes § 46b-15. Thus, we will not disturb a trial court's orders unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion . . . we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Our deferential standard of review, however, does not extend to the court's interpretation of and application of the law to the facts. It is axiomatic that [an issue] of law is entitled to plenary review on appeal." (Internal quotation marks omitted.) *Kayla M.* v. *Greene*, 163 Conn. App. 493, 504, 136 A.3d 1 (2016).

I

The defendant first claims that the court abused its discretion by excluding evidence of certain audio and videotape recordings that he offered, even though the court determined they did not relate to his interactions with the plaintiff and thus were not relevant. The defendant contends that this evidence was relevant to "attack the credibility of the plaintiff's witnesses" and thus the court improperly excluded it. We are not persuaded.

The following additional facts are relevant to this claim. After hearing from the plaintiff's witnesses in support of the application for a protection order, the court asked the defendant if he had any witnesses that he would like to call on his behalf. The defendant responded, "Well, only myself, Your Honor." After conducting a canvass regarding his waiver of certain rights, the court indicated that it was prepared to hear what the defendant had to say. Rather than offer testimony, however, the defendant attempted to play an audiotape. The court indicated that it would need "some foundation first" and asked the defendant to explain what was on the recording. The defendant indicated that he had a short recording of the first selectman "cursing at me and making derogatory statements toward me." The court told the defendant that it did not know how this was relevant to the pending application but allowed the defendant an opportunity to persuade the court otherwise. The defendant then argued that the recording would demonstrate that the first selectman had used offensive language at the office and, therefore, the fact that the defendant called the plaintiff offensive names could not have caused her fear as she claimed in her application. The court then stated: "I just want to redirect you toward the complaint that we have today . . . . I really can't—I take it from [the first selectman's] testimony that there are at least several areas where you have some disputes with the [town] or its employees. . . . The only one I'm concerned about today is the dispute with the issue raised by [the plaintiff's] complaint." The defendant said nothing further to press the admission of the recording of his conversation with the first selectman. Instead, he turned to a different recording, as reflected in the following colloquy with the court:

"[The Defendant]: Well, I think that as far as rebuttal testimony in reference to what [V] said, I think I should be able to provide evidence to rebut her testimony.

"The Court: Okay, her testimony indicated that she could hear you yelling and screaming in a very loud voice using some profanity, but that she couldn't recall the precise words that were used while you were in [the plaintiff's] office on December 26th.

"[The Defendant]: However, she also testified in reference to a recording in the tax collector's office as well. I would like to play a recording—

"The Court: The video recording.

"[The Defendant]: Yes, sir. I would like to—I was also audio recording with this audio recorder; I would like to play that and put it into evidence.

"The Court: If I listen to it, what would I hear?

"[The Defendant]: You would hear the tax—one of the tax collector employees running up to me and

demanding $20 for my video recording session, and you will understand my behavior in response to that was mute. . . .

"The Court: Okay, so you're telling me that I would hear that a town employee, other than [the plaintiff], came up to you and demanded that you pay her $20 for your recording of her?

"[The Defendant]: Just in the office, Your Honor, in a public space.

"The Court: Just recording in the public space.

"[The Defendant]: So the whole premise—one of the premises of the [plaintiff's] case here is that I act inappropriately, that I have always—you know, it's an escalating thing. This is a most recent one in July of this year. I think I should be able to produce evidence to counter the claim that I'm—

"The Court: The only claim that I'm really concerned about today, and I've let—taken some testimony that didn't relate to December 26th, but relates to earlier conduct as it relates to you and [the plaintiff].

"[The Defendant]: I understand that, Your Honor.

"The Court: Ms.—the other witness doesn't have a complaint on file today, [the first selectman] has not filed a complaint. So I don't think that's going to lead me to any relevant evidence for me to consider about whether or not to issue a civil protection order in this case.

"[The Defendant]: Well, I would think it would go to the veracity of the witness[es'] statements that they make at this hearing. If she said that I was inappropriate—acting inappropriately at the tax collector's office—

"The Court: Let me just ask you this. This videotape, this recording, is it of [V]?

"[The Defendant]: No, but it relates to the testimony that the witness gave.

"The Court: Okay, I'm not going to listen to it."

Our standard of review regarding evidentiary rulings is well settled. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Perez* v. *Minore*, 147 Conn. App. 704, 709, 84 A.3d 460 (2014).

"[T]he right to confront witnesses and the right to present a defense are fundamental to a fair trial. . . .

Those rights, however, are subject to reasonable limitations, such as the trial court's right, indeed, duty, to exclude irrelevant evidence. . . . The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. . . . [T]o establish an abuse of discretion, [the defendant] must show that [any] restriction imposed . . . [was] clearly prejudicial. . . .

"Relevance does not exist in a vacuum. . . . Relevant evidence, according to § 4-1 of the Connecticut Code of Evidence, is evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . To determine whether a fact is material . . . it is necessary to examine the issues in the case, as defined by the underlying substantive law, the pleadings, applicable pretrial orders, and events that develop during the trial. Thus, the relevance of an offer of evidence must be assessed against the elements of the cause of action, crime, or defenses at issue in the trial. The connection to an element need not be direct, so long as it exists. Once a witness has testified to certain facts, for example, his credibility is a fact that is of consequence to [or material to] the determination of the action, and evidence relating to his credibility is therefore relevant—but only if the facts to which the witness has already testified are themselves relevant to an element of a crime, cause of action, or defense in the case." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Fasano*, 88 Conn. App. 17, 35–37, 868 A.2d 79, cert. denied, 274 Conn. 904, 876 A.2d 15 (2005), cert. denied, 546 U.S. 1101, 126 S. Ct. 1037, 163 L. Ed. 2d 873 (2006).

Here, having reviewed the available record,[8] we conclude that the court properly determined that the audio and/or video recordings offered by the defendant at the hearing were not relevant to the court's determination of whether to grant the application for the protection order. The recording of the conversation between the defendant and the first selectman purportedly contained audio evidence of the first selectman using coarse language at the town hall and calling the defendant inappropriate names. The recording, even if it contained what the defendant purported, would not have aided the court because it would not have made "the existence of any fact that [was] material to the determination of the proceeding more probable or less probable than it would [have been] without the evidence." Conn. Code Evid. § 4-1. The issue before the court was not the behavior of the first selectman toward the defendant but, rather, whether the defendant's behavior toward the plaintiff reasonably could have caused her to fear for her physical safety. Furthermore, to the extent that the defendant sought to argue that the first selectman's use of vulgar or inappropriate language at his office

made it less likely that the defendant's use of similar language would have caused the plaintiff to have feared for her safety, he never proffered that the plaintiff was present for the conversation on the recording.[9]

With respect to the recording purporting to contain evidence of an unidentified employee of the tax collector's office demanding that the defendant pay $20 for his video recording, the defendant failed to explain to the court how this was relevant to the proceeding before it. It was not in dispute that the defendant and the town had ongoing issues related to the defendant paying for copies or recordings of public records or other documents. The recording did not purport to involve either V, who had testified earlier in the hearing about her own encounters with the defendant, or the plaintiff. As proffered by the defendant to the court, the recording would not have aided the court in the matter before it, and, therefore, like the other recording, the court properly excluded it.

Contrary to the defendant's claim, our review of the hearing transcript shows that the court gave the defendant every opportunity to cross-examine witnesses, including to impeach their credibility; to present his own testimony; and to call any additional witnesses or to offer *relevant* evidence in support of his defense. The defendant's claims to the contrary simply are unsupported by the record.

## II

Next, the defendant claims that the court improperly issued the protection order despite the fact that he was never arrested for violating any of the statutory provisions set forth in § 54-1k. This claim, which is premised on a fundamental misunderstanding of the applicable law, is entirely unavailing.

There are a number of statutory provisions granting the court the authority to issue protective or restraining orders. See, e.g., General Statutes § 46b-15 (family violence restraining orders); General Statutes § 46b-16a (civil protection orders); General Statutes § 46b-38c (family violence protective orders); General Statutes § 53a-40e (standing criminal protective orders); General Statutes § 54-1k (criminal protective orders); General Statutes § 54-82q (temporary restraining order regarding witnesses); General Statutes § 54-82r (protective orders for witnesses). Each provision contains its own set of specific requirements and procedures.

The defendant is correct that § 54-1k governs the issuance of criminal protective orders in cases involving stalking, sexual assault, and risk of injury to a child, and that it limits a court's authority to issue a protection order to instances in which a person has been arrested "for a violation of subdivision (1) or (2) of subsection (a) of section 53-21, section 53a-70, 53a-70a, 53a-70c, 53a-71, 53a-72a, 53a-72b or 53a-73a, or any attempt

thereof, or section 53a-181c, 53a-181d or 53a-181e . . . ."[10] The defendant also correctly asserts that his arrest following the December 26, 2018 incident was for breach of the peace in the second degree in violation of § 53a-181, a violation that did not trigger the court's authority to render a protective order under § 54-1k because breach of the peace is not among the statutory violations enumerated in § 54-1k. Our agreement with the defendant, however, ends there.

The court in the present case did not issue the protection order pursuant to § 54-1k, but upon consideration of an application for a civil protection order that the plaintiff filed pursuant to § 46b-16a. The application, a copy of which was served on the defendant, contains an express citation to § 46b-16a. Section 46b-16a contains no reference to § 54-1k, nor does it limit the court's authority to issue a protection order to individuals arrested under any particular enumerated statute. Rather, § 46b-16a provides that a protection order is available to "[a]ny person who has been the victim of sexual abuse, sexual assault or stalking" and does not have any requirement that the perpetrator be arrested prior to issuance of a protection order.[11]

The defendant has cited to no other relevant statutory provision or case law that supports his claim that the restrictions of § 54-1k are applicable in the present case. In short, the fact that the defendant was not arrested for violating one of the statutes listed in § 54-1k did not preclude the court from issuing the protection order in this case, and, accordingly, we reject the defendant's claim.

### III

The defendant next claims that the court's decision to issue a protection order was improper because it was based, in part, on evidence that the defendant videotaped the plaintiff while she was in the course of performing her duties as a public employee. According to the defendant, because he had a legal right to act as he did, his actions could not legally constitute stalking as required for a civil protection order. We disagree.

We view the defendant's claim as one that implicates evidentiary sufficiency. "If the factual basis of the court's decision is challenged, our review includes determining whether the facts set out in the memorandum of decision are supported by the record or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . Moreover, it is the exclusive province of the [court as the] trier of fact to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony. . . . Thus, if the court's dispositive finding . . . was not clearly erroneous, then the judgment must be affirmed." (Internal quotation marks omitted.) *Stacy B.* v. *Robert*

*S.*, 165 Conn. App. 374, 386–87, 140 A.3d 1004 (2016).[12]

The defendant's claim hinges on his contention that there is no statute in this state that makes it a crime to video record municipal employees in a public place such as a town hall. Regardless of whether someone legally may video record the actions of a public employee performing his or her duties in a public setting,[13] the mere existence of such a right or privilege does not automatically mean that an individual is permitted to exercise that right entirely unfettered and without adhering to reasonable legal restrictions. The defendant, after all, was not arrested and made subject to an application for a protection order solely on the basis of his act of videotaping the plaintiff but because, when doing so, he failed to comport himself in a reasonable manner as required by law.[14]

The defendant argues that in order for the court to issue a civil protection order on the basis of stalking, the court would have had to found with respect to the June, 2018 encounter that he had followed or laid in wait for the plaintiff. Proof of such acts are an element of stalking in the third degree in violation of General Statutes § 53a-181e[15] and, thus, would be necessary to obtain a criminal conviction under that statute. Stalking for purposes of obtaining a civil protection order, however, is sui generis, and covers a far broader range of prohibited actions. Section 46b-16a (a) provides in relevant part: "As used in this section, 'stalking' means two or more wilful acts, performed in a threatening, predatory or disturbing manner of: Harassing, following, lying in wait for, surveilling, monitoring or sending unwanted gifts or messages to another person directly, indirectly or through a third person, by any method, device or other means, that causes such person to reasonably fear for his or her physical safety." Thus, although following and lying in wait are among the actions that could trigger a civil protection order, the plaintiff needed only to allege and prove that, on two occasions, the defendant harassed, surveilled or monitored her in a manner that reasonably caused her to fear for her physical safety.

The court issued the underlying protection order on the basis of its findings that "the defendant ha[d] acted in two or more fashions, once in December of 2018, and earlier that year during the summer in a fashion that would cause a reasonable person to fear for their physical safety." We cannot conclude, on the basis of our review of the evidence before the court, that its findings are clearly erroneous. With respect to the videotaping incident that occurred in June, 2018, the plaintiff testified that the defendant had harassed her by surveilling her and aggressively placing a video camera within one foot of her face while interrogating her about freedom of information requirements. Such actions, when coupled with his threatening behavior during the

subsequent December 26, 2018 encounter with the plaintiff, were sufficient to satisfy the requirements of stalking necessary to support the issuance of a protection order in this case.

IV

The defendant next claims that the court improperly issued the protection order on the basis of actions that implicated his exercise of his rights of free speech and access to public records. We decline to review this claim because it is not adequately briefed.

"We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than [mere] abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [Simply put, we] do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed." (Internal quotation marks omitted.) *Starboard Fairfield Development, LLC* v. *Gremp*, 195 Conn. App. 21, 31, 223 A.3d 75 (2019).

Our Supreme Court has recognized that adequate briefing is of particular importance whenever the appellant is asserting a violation of his first amendment rights because of the analytical complexity of such claims. See *State* v. *Buhl*, 321 Conn. 688, 726, 138 A.3d 868 (2016) (upholding Appellate Court's decision not to review first amendment and due process claims because they were inadequately briefed). In *Buhl*, the court quoted federal precedent for the proposition that "[f]irst [a]mendment jurisprudence is a vast and complicated body of law that grows with each passing day and involves complicated and nuanced constitutional concepts." (Internal quotation marks omitted.) Id., citing *Schleifer* v. *Charlottesville*, 159 F.3d 843, 871–72 (4th Cir. 1998), cert. denied, 526 U.S. 1018, 119 S. Ct. 1252, 143 L. Ed. 2d 349 (1999). In considering the adequacy of briefing, it is proper for this court to consider, among other factors, (1) whether the claim is stated "clearly and succinctly" such that its contours can be understood by the court and the opposing party, (2) the "relative sparsity" of any analysis, meaning how much of the brief is dedicated to the claim, (3) whether the analysis is "confusing, repetitive [or] disorganized," and (4) whether the appellant has cited, analyzed and applied relevant legal authority." (Internal quotation marks omitted.) *State* v. *Buhl*, supra, 726–27.[16]

Here, we are left to guess at the precise contours of the defendant's first amendment claim. It is unclear whether the defendant is asserting that the issuance of the protection order constitutes an unconstitutional restriction on his future speech or conduct. Conversely, it is not clear whether he is asserting that the issuance of the protection order impermissibly punished him for engaging in constitutionally protected activities.[17] We

cannot define the defendant's claim for him and will not attempt to blindly navigate our way through the thorny thicket of first amendment jurisprudence with only a vague and bareboned claim to guide us.

Moreover, in the sparse briefing devoted to this claim, the defendant cites only two cases. The defendant makes no attempt to discuss applicable first amendment jurisprudence. Despite baldly urging us to "follow" the two decisions cited, he provides no analysis of those cases and fails even to state how he believes they may be applicable.[18]

Stated succinctly, the defendant's analysis of his first amendment claim is muddled, unfocused, and fails to place his arguments into any readily discernable legal parameters. In *Stacy B.* v. *Robert S.*, supra, 165 Conn. App. 384, this court concluded that it could not review a first amendment challenge to a civil protection order because "[m]any of the standards for first amendment analysis are highly fact specific" and "[w]ithout adequate briefing, [the court could not] determine the applicable legal standard for the first amendment claim . . . ." That same deficiency is present here. The defendant does not directly challenge the constitutionality of § 46b-16a, either facially or as applied, nor does he expressly assert that the protection order issued by the court prospectively infringes on any particular first amendment right. To the extent he is attempting to make such claims, however, they are inadequately briefed and, accordingly, we decline to review them.

V

Finally, the defendant claims that the court violated his right to due process by improperly engaging in ex parte communications with the plaintiff. We do not review this claim because it is unpreserved and the record is not adequate for review.[19]

Judges, with limited exception, ordinarily must refrain from engaging in ex parte contacts with parties. See Code of Judicial Conduct, Rule 2.9.[20] The defendant, in support of his claim that such an impropriety occurred in the present case, never raised the issue before the trial court and does not direct us toward any evidence in the record of an actual ex parte communication by the court. Instead, he asks us to assume that one occurred solely on the basis of statements the court made on the record at the hearing. We decline the defendant's invitation to engage in what amounts to pure speculation.

The defendant directs our attention to the hearing transcript and what he describes as a " 'smoking gun' statement by the trial judge." Specifically, he points to the following colloquy that occurred during the plaintiff's direct examination by her counsel:

"[The Plaintiff's Counsel]: All right. You mentioned that you hit a panic button; why does the [town] have

a panic button?

"[The Plaintiff]: Those panic buttons were put in so that the employees within the town hall could alert the police department, primarily because of [the defendant's] behavior to other people in the office.

"[The Plaintiff's Counsel]: How has he behaved toward other people in town hall?

"The Court: Listen, she doesn't know. Call [the first selectman], he'll testify."

The defendant argues that the *only* way the judge could have known that the first selectmen was at the hearing "to give testimony as opposed to just moral support" was because "the trial judge ha[d] ex parte communications with the opposing party . . . ." A logical leap is necessary, however, in order to assume that the court's statement, without more, demonstrated the court's knowledge of either the first selectman's presence in the courtroom, or, more importantly, that the plaintiff would in fact call the first selectman to testify. The statement, read in context, could as easily be viewed as an expression of the court's belief that the first selectman would be the more appropriate person to answer questions regarding the defendant's past behavior toward other town hall employees whom he supervised.

If the defendant believed that the court's statement had implied some improper ex parte communication with the plaintiff or her counsel, he could have asked for clarification at that time, requested that the court recuse itself, or asked that the hearing on the application for a protection order be continued. The defendant did none of those things.

Although an unpreserved due process claim may be addressed by this court under the doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015),[21] such a claim necessarily will fail if the record simply is inadequate to review the alleged violation. Here, the record is inadequate to ascertain whether an ex parte communication happened at all, let alone the nature of any such communication or its harm to the defendant. Accordingly, we cannot review the defendant's claim.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2012); we decline to identify any party protected or sought to be protected under a protective order or a restraining order that was issued or applied for, or others through whom that party's identity may be ascertained.

[1] General Statutes § 46b-16a provides in relevant part: "(a) Any person who has been the victim of sexual abuse, sexual assault or stalking may make an application to the Superior Court for relief under this section, provided such person has not obtained any other court order of protection arising out of such abuse, assault or stalking and does not qualify to seek relief under section 46b-15. As used in this section, 'stalking' means two or

more wilful acts, performed in a threatening, predatory or disturbing manner of: Harassing, following, lying in wait for, surveilling, monitoring or sending unwanted gifts or messages to another person directly, indirectly or through a third person, by any method, device or other means, that causes such person to reasonably fear for his or her physical safety.

"(b) . . . Such orders may include, but are not limited to, an order enjoining the respondent from: (1) Imposing any restraint upon the person or liberty of the applicant; (2) threatening, harassing, assaulting, molesting, sexually assaulting or attacking the applicant; and (3) entering the dwelling of the applicant.

"(c) No order of the court shall exceed one year, except that an order may be extended by the court upon proper motion of the applicant . . . ."

[2] General Statutes § 54-1k, titled "Issuance of protective orders in cases of stalking, harassment, sexual assault, risk of injury to or impairing morals of a child," provides in relevant part: "(a) Upon the arrest of a person for a violation of subdivision (1) or (2) of subsection (a) of section 53-21, section 53a-70, 53a-70a, 53a-70c, 53a-71, 53a-72a, 53a-72b or 53a-73a, or any attempt thereof, or section 53a-181c, 53a-181d or 53a-181e, the court may issue a protective order pursuant to this section . . . ."

[3] The trial court, in granting the application for a protection order, made minimal findings of facts in its oral ruling, stating, in relevant part, the following: "The court finds that the defendant has acted in two or more fashions, once in December of 2018, and earlier that year during the summer in a fashion that would cause a reasonable person to fear for their physical safety." After filing this appeal, the defendant did not file a notice pursuant to Practice Book § 64-1, indicating that the trial court's oral ruling failed properly to set forth the factual and legal basis for its decision, nor did he request an articulation in accordance with Practice Book § 66-5. In the absence of any indication to the contrary, we infer from the court's granting of the application that the court credited the evidence presented at the hearing in support of the factual allegations contained in the application, including the relevant testimony of the plaintiff.

[4] The transcript of the hearing on the protection order application shows that the trial court took judicial notice of the defendant's December 26, 2018 arrest and the resulting criminal action in which, according to the case detail, the defendant was charged with breach of the peace in the second degree in violation of General Statutes § 53a-181, a class B misdemeanor. See *Joe's Pizza, Inc.* v. *Aetna Life & Casualty Co.*, 236 Conn. 863, 865 n.4, 675 A.2d 441 (1996) (court may take judicial notice of file in related criminal docket).

General Statutes § 53a-181 (a) provides: "A person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or (2) assaults or strikes another; or (3) threatens to commit any crime against another person or such other person's property; or (4) publicly exhibits, distributes, posts up or advertises any offensive, indecent or abusive matter concerning any person; or (5) in a public place, uses abusive or obscene language or makes an obscene gesture; or (6) creates a public and hazardous or physically offensive condition by any act which such person is not licensed or privileged to do. For purposes of this section, 'public place' means any area that is used or held out for use by the public whether owned or operated by public or private interests."

As noted by the defendant in his reply brief, however, the arrest report, a copy of which the plaintiff included in the appendix to her appellate brief, was not part of the record before the trial court. Accordingly, we do not rely on that report in reviewing the trial court's decision in this matter. See, e.g., *Li* v. *Yaggi*, 185 Conn. App. 691, 702 n.8, 198 A.3d 123 (2018).

[5] On cross-examination, when asked whether he owned any firearms, the defendant refused to answer, citing "safety concerns." After the court indicated that safety concerns were not a privilege that it acknowledged, the defendant stated: "Well, I would like to take the fifth amendment claim on that." The court responded: "Okay."

[6] The content of the recording was not transcribed as part of the transcript of the hearing on the application for a protection order, although the court stated on the record, presumably to the court monitor: "There's no need for you to transcribe this, I'll have the transcript." It is unclear from this statement whether the court intended to admit the transcript offered by the defendant at this point, but such a ruling is not apparent from the hearing transcript. The defendant has included what purports to be a redacted

version of this transcript as part of his appendix to his appellate brief.

[7] After the appeal was filed, the defendant filed a motion with this court that he captioned a "motion to dismiss." He argued in his motion that the plaintiff's application for a protection order failed "to allege sufficient facts to provide *the original trial court* with subject matter or personal jurisdiction over [him]." (Emphasis added.) By way of relief, the motion asked this court to overturn the trial court's decision and to negate its orders. A motion to dismiss pursuant to Practice Book § 66-8, however, is not the proper vehicle for raising a claim that the *trial court* lacked jurisdiction; such a claim is properly raised as an issue on appeal. A motion to dismiss is properly used only to challenge the jurisdiction of *the reviewing court* or to assert that an appeal is untimely or suffers from some other defect warranting a dismissal of the appeal. Practice Book § 66-8. Accordingly, we denied the defendant's motion, although we did so "without prejudice to the panel that hears the merits of the appeal considering the issues raised in the motion to dismiss." Having reviewed the defendant's argument, we find no merit in his assertion that the trial court lacked personal jurisdiction over him or subject matter jurisdiction over the application for a protection order, and, accordingly, we now reject those claims on their merits.

Additionally, after the current appeal was briefed and argued, the trial court granted a motion filed by the plaintiff to extend the protection order. The defendant filed an amended appeal challenging that ruling as well as the trial court's earlier denial of the defendant's motion seeking a stay of execution of the original protection order pending a final resolution of the appeal. We ordered the amended appeal severed and treated as a separate appeal. See *S. A.* v. *D. G.*, Docket No. AC 43863 (Conn. App.) (pending appeal filed January 7, 2020).

[8] It is important to note that the defendant never sought to have any of the recordings that he sought to admit at the hearing marked for identification or otherwise preserved for appellate review. Accordingly, our review is somewhat circumscribed because it is limited to a consideration of the defendant's proffer to the trial court.

[9] Even if the defendant were able to convince us that the first selectman's use of coarse language toward him was relevant for the reasons he asserted at the hearing, the defendant would also have to demonstrate that he was harmed by the court's refusal to admit the recording into evidence. See *Sullivan* v. *Metro-North Commuter Railroad Co.*, 292 Conn. 150, 161, 971 A.2d 676 (2009) ("[E]ven if a court has acted improperly in connection with the introduction of evidence, reversal of a judgment is not necessarily mandated because there must not only be an evidentiary [impropriety], there also must be harm. . . . In the absence of a showing that the [excluded] evidence would have affected the final result, its exclusion is harmless." (Citation omitted; internal quotation marks omitted.)). As the trial court explained to the defendant at the hearing, he was free to testify about his encounter with the first selectman and to make whatever argument to the court he believed that testimony supported. Unless his account was somehow contested, the recording would have been merely cumulative and its exclusion therefore harmless.

He also could have asked the first selectman about the purported encounter during cross-examination, or recalled him as a witness. Because he never did so, the recording was also not relevant regarding the credibility of the first selectman as argued by the defendant on appeal, even if such extrinsic evidence would have been admissible for that purpose. See Conn. Code Evid. § 6-10 (c).

[10] Protective orders are also authorized upon an arrest for a violation of General Statutes § 53a-182b or 53a-183 provided that the court also finds that "such violation caused the victim to reasonably fear for his or her physical safety." General Statutes § 54-1k (a).

[11] Although not applicable here, § 46b-16a does expressly limit its application to those persons who have not obtained any other type of protective order arising out of the same alleged abuse, assault or stalking and who do not qualify to seek relief under § 46b-15.

[12] We note that, "[t]o the extent that our review requires us to construe statutory provisions, this presents a legal question over which our review also is plenary." *Washington Mutual Bank* v. *Coughlin*, 168 Conn. App. 278, 288, 145 A.3d 408, cert. denied, 323 Conn. 939, 151 A.3d 387 (2016).

[13] Courts in this state have not directly addressed the parameters of a "right to record" the public acts of public employees, including the police, although such a right has been deemed by some federal circuit courts to exist under the first amendment. See, e.g., *Glik* v. *Cunniffe*, 655 F.3d 78,

83 (1st Cir. 2011) ("we have previously recognized that the videotaping of public officials is an exercise of [f]irst [a]mendment liberties"). Although the defendant invokes the state constitution as a potential source of his asserted right to record public officials in the course of their fulfilling their public duties, he has not engaged in the type of independent analysis required to obtain review of a state constitutional claim. See *State* v. *Saturno*, 322 Conn. 80, 113 n.27, 139 A.3d 629 (2016), citing *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992).

With respect to a first amendment right to record, the First Circuit has stated as follows: "It is firmly established that the [f]irst [a]mendment's aegis extends further than the text's proscription on laws abridging the freedom of speech, or of the press, and encompasses a range of conduct related to the gathering and dissemination of information. As the Supreme Court has observed, the [f]irst [a]mendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw. . . . An important corollary to this interest in protecting the stock of public information is that [t]here is an undoubted right to gather news from any source by means within the law. . . .

"The filming of government officials engaged in their duties in a public place . . . fits comfortably within these principles. Gathering information about government officials in a form that can readily be disseminated to others serves a cardinal [f]irst [a]mendment interest in protecting and promoting the free discussion of governmental affairs. . . . Moreover, as the [United States Supreme] Court has noted, [f]reedom of expression has particular significance with respect to government because [i]t is here that the state has a special incentive to repress opposition and often wields a more effective power of suppression. . . . Ensuring the public's right to gather information about their officials not only aids in the uncovering of abuses . . . but also may have a salutary effect on the functioning of government more generally . . . ." (Citations omitted; internal quotation marks omitted.) *Glik* v. *Cunniffe*, supra, 655 F.3d 82–83. To the extent that the defendant claims that his first amendment rights are implicated by the issuance of a protection order, we conclude that this claim is inadequately briefed, as discussed in part IV of this opinion.

[14] The plaintiff never disputed before the trial court or on appeal that the defendant was a public invitee to town hall and, as such, was permitted to be there for "a purpose for which the [building was] held open to the public." (Internal quotation marks omitted.) *Sevigny* v. *Dibble Hollow Condominium Assn.*, *Inc.*, 76 Conn. App. 306, 320, 819 A.2d 844 (2003). It was his *behavior* while at town hall, not merely his *presence* there, that is at issue in this case.

[15] General Statutes § 53a-181e (a) provides: "A person is guilty of stalking in the third degree when such person recklessly causes another person to reasonably (1) fear for his or her physical safety, or (2) suffer emotional distress, as defined in section 53a-181d, by wilfully and repeatedly following or lying in wait for such other person."

[16] The fact that the plaintiff attempted to respond to the defendant's first amendment claim in her appellate brief in no way diminishes the inadequacy of the defendant's briefing. See *State* v. *Buhl*, supra, 321 Conn. 728–29 ("appellant cannot . . . rely on the appellee to decipher the issues and explain them to the Appellate Court"). Rather, in some ways, the response only highlights the problem. In her appellate brief, the plaintiff attempts to answer the defendant's first amendment claim by interpreting it as a claim that the defendant's actions did not constitute "true threats" and thus was speech protected by the first amendment. See *Virginia* v. *Black*, 538 U.S. 343, 359–60, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003). The plaintiff's analysis, however, may be too narrow of a reading of the defendant's claim.

[17] We note that to the extent the defendant's claim is that his constitutional right to free speech has been violated because he is being punished for constitutionally protected activities, he has failed to explain how the imposition of the protection order, which is strictly prospective in its scope, amounted to a punishment for his prior acts.

[18] One of the cases cited by the defendant, *State* v. *Linares*, 232 Conn. 345, 655 A.2d 737 (1995), in fact, reasonably might be viewed as undermining the defendant's claim. "The protections afforded by the [f]irst [a]mendment . . . are not absolute, and we have long recognized that the government may regulate certain categories of expression consistent with the [c]onstitution." (Internal quotation marks omitted.) *State* v. *Moulton*, 310 Conn. 337, 348–49, 78 A.3d 55 (2013). "[S]o-called content-neutral time, place, and manner regulations are acceptable so long as they are designed to serve a substantial

governmental interest and do not unreasonably limit alternative avenues of communication." (Internal quotation marks omitted.) *Morascini* v. *Commissioner of Public Safety*, 236 Conn. 781, 791, 675 A.2d 1340 (1996). In *Linares*, our Supreme Court upheld against a first amendment challenge the defendant's conviction for intentionally interfering with the legislative process when she, along with other activists, unfurled a large banner during the governor's budget address to the state house of representatives and chanted or shouted in loud voices. *State* v. *Linares*, supra, 353. Thus, *Linares* stands for the proposition that statutory limitations on physical or verbal expressions of speech, even if that speech occurs in a public forum, can be properly restricted provided any limitations are "content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." (Internal quotation marks omitted.) Id., 367.

[19] To the extent that the defendant also seeks to challenge other actions or procedures taken by the court during the hearing, none of these additional claims has been adequately briefed and, therefore, they are deemed abandoned. See *Jackson* v. *Water Pollution Control Authority*, 278 Conn. 692, 711, 900 A.2d 498 (2006) ("[a]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed" (internal quotation marks omitted)).

[20] Rule 2.9 of the Code of Judicial Conduct provides in relevant part: "(a) A judge shall not initiate, permit or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter, except as follows:

"(1) When circumstances require it, ex parte communications for scheduling, administrative, or emergency purposes, which does not address substantive matters, is permitted, provided:

"(A) the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the ex parte communication; and

"(B) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and gives the parties an opportunity to respond. . . ."

[21] "Under this familiar test, [a] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original; internal quotation marks omitted.) *State* v. *Dunbar*, 188 Conn. App. 635, 644–45, 205 A.3d 747, cert. denied, 331 Conn. 926, 207 A.3d 27 (2019).